## BRENT v. THORNTON et al.

(Circuit Court of Appeals, Fifth Circuit. December 20, 1898.)

No. 679.

ADMIRALTY JURISDICTION—POSSESSORY ACTION—REFUSAL TO ISSUE PAPERS TO VESSEL.

A possessory action in admiralty will not lie merely for the refusal of a collector of customs to issue papers to a vessel, though such vessel may have been temporarily prevented from navigating as the result of the collector's nonaction.

Appeal from the District Court of the United States for the Northern District of Florida.

Henry H. Thornton became a part owner of the steamtug Monarch; the bill of sale describing Thornton as "trustee," without any statement or indication of the persons for whom he was trustee. In the oath which he was required by law to take for the purpose of effecting the transfer to him, and permitting the use of the tug, Thornton was described merely as "trustee." The appellant, who was the United States collector of customs for the district of Pensacola, Fla., enrolled and licensed the tug to carry on her business as a tugboat in Pensacola harbor, and within the United States customs district of Pensacola; the enrollment and license describing Thornton merely as "trustee." On April 5, 1897, the appellant, in his official capacity, and by order of his official superiors, took possession of the tug's papers; and, upon an application for their restoration, he demanded that Thornton should show by affidavit the names of the persons for whom he, as trustee, held title in the tug. Thornton complied with this requirement. Subsequently, on April 9, 1897, the appellant further required that Thornton and B. De Rochblave, the other part owner of the tug, should make an affidavit that they would not employ the tug, or allow her to be employed, in the transportation of arms and ammunition or men to the Island of Cuba, in aid of the Cuban insurgents, or in any violation of the navigation or neutrality laws of the United States. This Thornton and De Rochblave refused to do. The tugboat remained tied up at the wharf until April 20, 1897, when an agreement was entered into between the owners of the tug and the appellant, by which the tug might engage in her usual business in the harbor of Pensacola, provided a United States customs inspector should remain on board, and be paid by the owners of the tug, if the government insisted that he be so paid. The tug then engaged upon her usual business, and continued to be employed until May 22, 1897, on which day the owners filed their libel, and caused the tug to be seized by the marshal. They prayed that the tug be delivered to them, and that the respondent be condemned to pay the damages alleged to have resulted from his unlawful acts. The respondent pleaded to the jurisdiction, and his plea was overruled. Subsequently, and before the final trial, the tug was given her papers by the collector of customs. The trial resulted in a decree against the respondent for $2,017.25 damages.

John Eagan, for appellant.

W. A. Blount and W. A. Blount, Jr., for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and PARLANGE, District Judge.

PARLANGE, District Judge (after stating the facts as above). Whatever right of action the appellees may have arises from the refusal or failure of the collector of customs to issue papers to the tug, after Thornton had disclosed the persons for whom he was trustee, and not from the action of the collector in withdrawing the papers in which Thornton was described as trustee, without indication of the person or persons for whom he was trustee. The with-

drawal of the papers was lawful. Counsel for the appellees assert in their brief that this is a possessory action. They insist that "this is a suit for the recovery of a vessel, and not of the papers," and also that: "Even if it were a suit for the papers, we think that it would have been maintainable, because the papers were an essential part of the vessel, and, as such, maritime property, and, under the authorities cited, a libel lies for possession of maritime property." All the authorities cited on the brief for the appellees were cases in which seizures of vessels had been made by marshals, sheriffs, or other officers, and in which the possession of the owners had been ousted. In the present case the possession of the owners was not ousted. There was no seizure by the collector of customs. The owners resorted to the proceeding of causing the seizure of their tug, which, at the time of the seizure by their own process, they were operating under an agreement with the collector of customs. Virtually, the object sought to be accomplished by the action was to compel the collector of customs to issue papers to the tug, or to enable the tug to navigate without papers. The counsel for the appellees assert that the claim for damages is incidental. We are unable to discover in an action thus brought any ground for admiralty jurisdiction. We are clear that, where a collector of customs refuses merely to issue papers to a vessel, a possessory action in admiralty will not lie, although the vessel may have been temporarily prevented from navigating as the result of the collector's nonaction. The lower court had no jurisdiction of the cause. The decree appealed from is reversed, and the cause is remanded to the lower court, with the direction to sustain the plea to the jurisdiction and to dismiss the cause.